**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Gunnels, | No. CV-18-00543-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Melissa Gunnels brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises three issues on appeal: 1) the Administrative Law Judge ("ALJ") failed to give clear and convincing reasons to discount Plaintiff's subjective symptom testimony and written statements; 2) the ALJ misapplied *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), to give inappropriate weight to the nonexamining state agency physician opinions; and 3) the ALJ failed to resolve discrepancies between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT").

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 16, 17, & 18). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that the Commissioner's decision should be affirmed.

## I. Procedural History

Plaintiff filed an application for social security disability benefits on June 25, 2015. (Administrative Record ("AR") 177).[1] Plaintiff alleged disability beginning on September 1, 2012 based on fibromyalgia, rheumatoid arthritis, chronic headaches, vision impairments, occipital neuralgia, dystonia, sciatica, cervical disc displacements, irritable bowel syndrome, and gastroparesis. (AR 87–88). Plaintiff's application was denied upon initial review (AR 86) and on reconsideration (AR 97). A hearing was held on October 17, 2017 (AR 28), after which ALJ Larry E. Johnson found, at Step Five, that Plaintiff was not disabled because she could perform other work existing in significant numbers in the national economy. (AR 21–22). On September 14, 2018 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

Plaintiff's date last insured ("DLI") for DIB purposes is December 31, 2015. (AR 87). Thus, to be eligible for benefits, Plaintiff must prove that she was disabled during the time period of her AOD of September 1, 2012 and her DLI of December 31, 2015.

## II. Factual History[2]

Plaintiff was born on June 24, 1979 making her 33 years old at the AOD of her disability. (AR 87). She has a high school education and past relevant work as a data entry specialist. (AR 197–198).

### A. Treating Physicians

#### i. Pulmonary Associates of Southern Arizona

On November 2, 2012 Plaintiff's asthma was stable and respiratory exam normal. (AR 424).

On March 12, 2013 her asthma was stable and well controlled with medication. (AR 416–418). On October 28, 2013 her asthma continued to be well controlled with no exacerbation in the last 6 months. (AR 413).

On December 3, 2014 Plaintiff reported slight worsening of asthma; respiratory

---

[1] Plaintiff filed a prior application in 2010 that was denied at the hearing level. (AR 88).
[2] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal.

exam was normal and montelukast was prescribed. (AR 407–408).

On February 16, 2015 her symptoms were slightly worse but otherwise stable on medication and respiratory exam normal. (AR 404). A CT in January 2015 showed a small ground glass opacity in the right upper lobe, most likely inflammatory, but she had no symptoms associated with it. (AR 405). A chest x-ray on December 20, 2015 showed no active disease and slightly more shallow inspiratory effort. (AR 624).

  ii. Camp Lowell Cardiology

On March 22, 2012 Plaintiff felt well, had no significant changes in palpitations, and significant improvement of symptoms with medication. (AR 429–432).

On October 25, 2013 Plaintiff's palpitations were somewhat more pronounced, she used a cane only if walking a long distance or very fatigued, and was seeing a new rheumatologist for increased pain. (AR 437). Palpitations were controlled with medication. (AR 440).

On January 17, 2014 she reported arthritis pain quadrupled after the baby, palpitations, and no chest pain or discomfort. (AR 442). Cardiovascular and musculoskeletal exams were normal; medication was increased. (AR 445). On March 4, 2014 Plaintiff reported significant improvement with the medication increase but that she still had palpitations on bad pain days. (AR 447). On December 2, 2014 cardiovascular and musculoskeletal exams were normal and Plaintiff was to continue her medication. (AR 455–456).

On March 6, 2015 Plaintiff complained of new atypical chest discomfort and Apixaban was prescribed. (AR 464). An echocardiogram in February 2015 was normal and a venous duplex in March 2015 showed no evidence of deep venous thrombosis. (AR 476–477). On March 24, 2015 Plaintiff had continued intermittent chest discomfort, occurring after taking Amitiza and Plaquenil. (AR 466). The assessment was atypical chest pain, suspect side effect to medication, and a different medication was prescribed. (AR 470). On August 7, 2015 Plaintiff reported two recent episodes of chest discomfort with lightheadedness, and mild increase in edema. (AR 471). On exam she had mild 1+ bilateral

ankle/pretibial edema. (AR 474). The assessment was palpitations good response to medication, and atypical chest pain possibly side effect to medication and probably GI in nature. (AR 474–475). On December 3, 2015 Plaintiff had no issues with chest discomfort, but a great deal of discomfort from rheumatoid arthritis and was using a cane and having difficulty walking. (AR 609). On exam she had mild to 1+ bilateral ankle/pretibial edema and musculoskeletal findings were normal. (AR 612).

iii.    Old Pueblo Healthcare

Plaintiff was seen on July 17, 2013 to establish care and receive B12 injections as requested by her neurologist. (AR 541). Plaintiff rated her energy 5/10 and said her knees were hurting badly. On exam she had steady gait, ROM all joints, strength equal in bilateral extremities, SLR intact with limited flexion at hip, and point tenderness to base of neck to paraspinal muscles. (AR 542). Follow-up notes were: fibromyalgia/pain, joint, multiple sites; sciatica/herniated disc, Plaintiff cannot sit for long periods of time and would like to change to Butrans instead of Vicodin and Ultram; begin B12 injections; and blood work for fatigue. (AR 543).

On August 20, 2013 Plaintiff was using a cane and wanted to get back on the Butrans patch; she agreed to use tramadol for breakthrough pain. (AR 539). Treatment notes indicated positive rheumatoid factor and elevated CRP, and using Flexeril and amitriptyline for fibromyalgia/fatigue. (AR 540). On November 14, 2013 Plaintiff reported she was diagnosed with rheumatoid arthritis and was still fatigued and in pain, but meds brought pain down to 3/10; she had normal gait and symmetric strength. (AR 538). On December 14, 2013 Plaintiff reported more pain due to weather, stiff joints, and pain 5/10; Flexeril helped but was not lasting and Plaintiff was advised to take more if needed. (AR 536–537).

On March 13, 2014 Plaintiff reported problems with her hands shaking and pain in wrists and forearms, especially when lifting her 25 lb. son. (AR 532). On exam she had no edema, symmetric strength, tremor of both hands, positive Tinel's at carpal tunnel, and was using a cane; she was referred to a neurologist for hand pain. (AR 532). On May 8, 2014

Plaintiff complained of pain in knees and ankles and noted she was changing meds with her neurologist; she was using a cane and strength was symmetric. (AR 530). On June 5, 2014 Plaintiff reported worse pain, achy all over, and swelling in legs, feet, and ankles; pain meds were wearing off after a few hours. (AR 529). She was positive for edema at ankles and using a cane, and pain meds were increased. (AR 529–530). On July 24, 2014 Plaintiff complained of left calf discomfort especially when on her feet or sitting for long periods, and chest discomfort. (AR 526). On exam she had mild edema at ankles, symmetric strength, left calf slightly swollen, and was using a cane. On August 21, 2014 Plaintiff said her pain was not well controlled due to weather changes; medications were increased. (AR 525–526).

On January 17, 2015 Plaintiff reported more pain with cold, wet weather and sometimes had difficulty picking up her children. (AR 520). On exam she had no edema, symmetric strength, and was using a cane. (AR 520–521). On March 26, 2015 Plaintiff felt like her meds had lost their effectiveness; she had no edema, symmetric strength, and was using a cane. (AR 517). On April 13, 2015 her gait was steady, upper and lower extremity strength equal, and baseline range of motion nontender to palpation. (AR 516). On August 13, 2015 Plaintiff's arthritis was in flare due to weather; she was not on biologics due to bad reactions and felt oxycodone was not controlling her pain long enough. (AR 511). On October 12, 2015 Plaintiff had pain in her right wrist and shoulder, 10/10; on exam she had pulses symmetrical upper and lower extremities, motor strength symmetrical, grips equally bilaterally, point tenderness to medial epicondyle and anterior shoulder joint, pain increase with movement and palpation of joints, good ROM, no swelling, and steady gait. (AR 636–637). Plaintiff was prescribed ibuprofen and given a Toredal shot. (AR 638). On October 22, 2015 she reported Toredal shot helped her bursitis and arthritis. (AR 635). On December 3, 2015 Plaintiff reported her joint pain/arthritis was the same and Toredal shots helped her back and hip pain, and asthma was stabled. (AR 633). On exam she had no edema, strength symmetric, and using cane for support. On December 31, 2015 she had increased pain in hands due to cold; on exam she had no edema, some swelling around the

right index and middle finger MCP joints, strength symmetric, and using cane. (AR 631–632).

### iv. Northwest Rheumatology.

Plaintiff had a consultation on October 18, 2013 and reported a 4-year history of fibromyalgia that started after she took prednisone for an asthma attack. (AR 296). Plaintiff complained of chronic, aching pain all over, worse with humidity, and swelling in her knees and legs. On exam she had tender knees, shoulders, wrists, elbows, and MCPs, mild resting tremor, and muscle power 4/5 legs and arms. (AR 297). Dr. Tok's impression was polyarthritis, possibly rheumatoid arthritis, and he ordered labs and prescribed Methotrexate and folic acid. (AR 298). On January 20, 2014 her rheumatoid factor was above high normal and Dr. Tok assessed rheumatoid arthritis and increased Methotrexate. (AR 294).

On April 22, 2014 Plaintiff stated Methotrexate helped minimally; she has one hour of stiffness that goes away then comes back later, and her ankles and hands swell at times. (AR 315). On exam she had tender shoulders, wrists, MCPs, knees, ankles, and MTPs. (AR 316).

On July 22, 2014 Plaintiff complained of increased joint pain after being off Enbrel due to DVT/PE. (AR 311). The plan was to restart Enbrel. (AR 313).

On October 21, 2014 Plaintiff complained of diffuse joint pain and said Methotrexate helped some. (AR 307). On exam she had tender knees, wrists, and ankles, and no swollen joints. (AR 308).

On February 10, 2015 Plaintiff reported increased pain in her hands and feet and lower back pain, and said Methotrexate helped overall. (AR 303). On exam she had mild pain on rotation of the c spine and tender shoulders, elbows, wrists, ankles, and feet, with no swelling in the knees. (AR 304).

On May 27, 2015 Plaintiff reported severe joint pains that take her breath away, and difficulty walking without a cane. (AR 299). On exam she had pain on ROM in the shoulders and tender wrists, MCPs, knees, and ankles. (AR 300).

On September 16, 2015 Plaintiff complained of increased pain in arms, shoulders, and hands, and could not open bottles or brush her hair. (AR 602). On exam she had pain on ROM shoulders, tender wrists, MCPs, mild swelling MCPs, and was prescribed Xeljanz. (AR 603, 605).

### v. Arizona Oncology

On June 6, 2014 Plaintiff was seen at Arizona Oncology for iron deficiency anemia and prescribed iron infusions. (AR 577–579). She received three doses with complete correction. (AR 557).

After Plaintiff was diagnosed with left leg DVT/PE, she was referred for a repeat CTA and doppler ultrasound, which showed resolution of PE and old thrombus in left leg vein. (AR 552–554). Plaintiff was recommended to stop oral anticoagulation, and another doppler ultrasound showed no evidence of any residual thrombus. (AR 554).

### vi. Tucson Gastroenterology

On February 7, 2014 Plaintiff reported bloating and abdominal pain. (AR 324). Dr. Mc Nerney assessed IBS and gastroparesis, advised limiting narcotics, and prescribed Linzess. (AR 326–327).

### vii. ER Visits

Plaintiff was seen at Northwest Medical Center in June 2014 for cough and shortness of breath. (AR 333). She was found to have bilateral pulmonary edema and deep vein thrombosis, most likely secondary to oral contraceptives and Enbrel, and was prescribed Coumadin and Lovenox. On August 14, 2014 she was seen at UMC for recurrent shortness of breath and discharged home in good condition with instructions to continue her medications. (AR 373).

Plaintiff was seen at TMC on June 1, 2015 for chest pain. (AR 481–482). She noted that she recently started a new arthritis drug and that she had similar breathing issues from a different arthritis drug last year. Imaging tests were normal and it was recommended Plaintiff follow up with her rheumatologist. (AR 487–488). Plaintiff was seen again for chest pain on December 20, 2015 and reported weakness, shortness of breath, nausea,

headache, and congestion. (AR 787). Cardiovascular and pulmonary exams were normal (AR 791) and imaging results were normal (AR 793); the impression was atypical chest pain and Plaintiff was given pain medication and discharged. (AR 795).

B.    State Agency Physicians

At the initial disability determination level, Dr. Fahlberg stated that while Plaintiff had seen more treating physicians since her prior filing and had been loosely assigned the diagnoses of rheumatoid arthritis and fibromyalgia, there was no support that she had any new condition other than a resolved deep vein thrombosis pulmonary embolism. (AR 93). Dr. Fahlberg further stated that Plaintiff clearly had an "allegation predominant condition" and symptom exaggeration. He applied *Chavez* and Acquiescence Ruling 97-4(9) and found no changed circumstance and therefore determined that Plaintiff was not disabled. (AR 95).

On reconsideration, Dr. Mansour noted that Plaintiff had a chronic diffuse pain finding and that there was no evidence to support the diagnoses of rheumatoid arthritis or fibromyalgia. (AR 105). He also noted Plaintiff was using a cane but that her exams did not show any musculoskeletal deformities mandating the need for an assistive device. Dr. Mansour concluded that there was very little medical evidence supporting a severe medically determinable impairment and that Plaintiff's credibility was close to zero. He further found no changed circumstance under *Chavez* and concluded Plaintiff was not disabled. (AR 106–107).

C.    Plaintiff's Testimony

On a Function Report dated August 30, 2015 Plaintiff stated that she is in pain 24 hours a day, 365 days a year. (AR 219). Arthritis makes it hard to brush her teeth and comb her hair, and she has a stabbing feeling in her fingers. She keeps her hair short so she can manage it. (AR 221). It can take up to 3 hours for her body to limber up because she is so stiff and achy. (AR 219). She also has chronic head pain causing aching from front to back, blurry vision, and ringing in her ears. (AR 226). She can't sit, stand, or walk for long periods because of pain and stiffness, and rests when she can and elevates her feet. Her

illness affects her sleep and she cannot sleep without medication and changes position throughout the night. (AR 220). She takes pain medication 3 times a day but her pain never goes away. (AR 226).

In a typical day Plaintiff sees her oldest son off to school, then cares for her two youngest sons by feeding and changing them, watching them play, and watching tv with them. (AR 220). She naps when the toddlers nap in the afternoon and occasionally helps her oldest son with homework. Her hobbies are watching tv and occasionally reading to her children or doing a puzzle with them. (AR 223). Plaintiff prepares simple foods like sandwiches and frozen meals, or her husband will get take out. (AR 221). She folds clean laundry and occasionally vacuums, and her husband does the yard work. (AR 222). Plaintiff goes out once or twice a week, spends time with family, drives to appointments, and shops in stores for basic needs, but her husband does all the grocery shopping. (AR 222–223). She cannot handle the bank accounts or bills because of problems with her memory. (AR 223).

Plaintiff reported that her illness affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, remember, concentrate, follow instructions, and use her hands. (AR 224). She can walk for 25 minutes then needs to rest for 10 minutes. She uses a cane when she's going to walk for long periods of time and needs help with stability. (AR 225). In 2010 a physical therapist ordered a forearm crutch and 4-wheeled walker.

On a Disability Reported dated December 25, 2015 Plaintiff reported an increase in frequency and severity of her chronic pain and daily headaches. (AR 231). She was spending more time resting, tried to help with light chores but stopped frequently to rest, and had assistance for more physically demanding chores. (AR 239).

At the hearing before the ALJ, Plaintiff testified that she stopped working because of a bad asthma attack. (AR 32). She was given nebulizer treatments and steroids at the hospital and released the same day, but within 24-48 hours she was unable to move and was in complete, debilitating pain that has never cleared up. Plaintiff stated she had rheumatoid arthritis, spinal stenosis, bone spurs, disc herniations in her upper and lower

back, pain from sitting and standing, pain in her arms and legs, and migraines. She takes Xeljanz and Methotrexate for her arthritis; it helps but the pain is still there. (AR 33–34). Plaintiff testified that she has joint damage and must be careful how she lifts things to not hit her hands; her hands look normal, but her ring size went from 4 ½ to almost a 6 or 6 ½, and her knuckles are getting bulbous. She can only use her hands for a certain amount of time; when they get tired she fumbles a lot and drops things and has to rest; her overhead reaching is limited; and she can reach out front but it causes some shoulder and arm pain. (AR 35).

Plaintiff testified she must elevate her legs throughout the day and take a lot of breaks. (AR 34–35). She takes 6–8 breaks during the day and a lot at night, typically 20–30 minutes each. (AR 38–39). She can walk for 15–20 minutes; her husband does the grocery shopping because she has pain in her legs, back, knees, and feet. (AR 36). After a certain amount of sitting, she has to get up or lay down to relieve pain in her back.

Plaintiff stated she spends her days doing "normal mom duties" and does what she can, but after she gets overexerted she lays down or elevates her legs. (AR 36). She can drive, go to the mall for a short period of time, and cook simple things. (AR 37). She has to take a break folding laundry because of her hands and has trouble doing her hair because she doesn't want to drop the blow dryer. (AR 38).

D.    Vocational Testimony

At the hearing before the ALJ, Kathleen McAlpine testified as a vocational expert. (AR 39). She classified Plaintiff's past work as a data entry clerk and an information clerk as sedentary. (AR 39).

The ALJ asked McAlpine to assume an individual who could do a range of light work: frequently lift 10 pounds and occasionally lift 20 pounds; stand/walk 4 out of 8 hours; sit 6 hours; frequently handle, reach, and do fine manipulation with no keyboarding required;[3] frequently climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally bend and kneel; never crawl; and no unprotected heights or fast-moving

---

[3] The ALJ clarified that keyboarding could be occasional but not an integral or primary component of the job. (AR 40–41).

machinery. (AR 40). McAlpine testified such a person could not do Plaintiff's past work because of the keyboarding, but could do other jobs such as courier/messenger, janitor/cleaner, and parking lot attendant. (AR 40–41).

For the second hypothetical, the ALJ added a requirement to elevate the legs for 15–20 minutes at a time throughout the day. (AR 41). McAlpine testified that there would be no work for such an individual. (AR 42). On questioning by Plaintiff's attorney, McAlpine stated that there were no jobs in the national economy that would allow for additional 15–20 minute breaks over and above the standard amount of breaks in a typical workday.

E.    ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of rheumatoid arthritis and asthma. (AR 17). The ALJ considered the effect of *Chavez* and AR 97-4(9) and found that Plaintiff had not overcome the presumption of continuing non-disability. (AR 15).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. (AR 19). The ALJ specifically found that Plaintiff's activities of daily living were not consistent with her allegations of complete disability. (AR 20). The ALJ also noted that there was no medical evidence supporting Plaintiff's allegation of needing to keep her legs elevated during the day. (AR 20).

The ALJ gave great weight to the state agency physician opinions that Plaintiff had not overcome her *Chavez* burden because the opinions were consistent with the medical evidence. (AR 20).

The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: stand/walk for 4 hours in an 8-hour work day; frequently handle, reach, and perform fine manipulation; prohibited from jobs that require keyboarding; never climb ladders, ropes, or scaffolds but frequently climb ramps or stairs; never crawl; occasionally kneel and bend; and must avoid unprotected heights and workplace hazards. (AR 17). The ALJ found that Plaintiff was unable to perform her past work as a data entry clerk and a telemarketing info clerk (AR 20), but that she could perform other work existing in

significant numbers in the national economy such as courier messenger, janitor/cleaner, and parking lot attendant. (AR 21). The ALJ therefore concluded Plaintiff was not disabled. (AR 22).

### III.    Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from

the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV.   Discussion

Plaintiff argues that her case should be remanded for consideration of the evidence because the ALJ erred by failing to give clear and convincing reasons to discount her subjective symptom testimony, because the ALJ misapplied the *Chavez* Acquiescence

1    Ruling to give inappropriate weight to the state agency physician opinions, and because

2    the ALJ failed to resolve discrepancies between the VE testimony and the DOT. (Doc. 16).

3        The Commissioner argues that the ALJ properly discounted Plaintiff's subjective

4    symptom allegations, properly evaluated the medical opinions and other evidence to assess

5    Plaintiff's RFC, and that substantial evidence supports the Step Five finding. (Doc. 17).

6        The Court finds that the ALJ gave legally sufficient reasons to discount Plaintiff's

7    subjective complaints. The Court further finds that to the extent that the ALJ misapplied

8    *Chavez*, any error was harmless and did not affect the ultimate disability determination.

9    Finally, the Court finds no error in the ALJ's Step Five finding based on the VE's

10   testimony. Accordingly, the Commissioner's decision will be affirmed.

11       A.    Subjective Symptom Testimony

12       Plaintiff first argues that the ALJ failed to provide clear and convincing reasons to

13   discount her subjective testimony by: 1) misconstruing her activities of daily living

14   ("ADL"); 2) referring to her use of narcotics, perhaps suggesting the possibility of drug-

15   seeking behavior; and 3) finding that the objective medical evidence was not consistent

16   with Plaintiff's claimed allegations, including a need to elevate her feet.

17       "An ALJ's assessment of symptom severity and claimant credibility is entitled to

18   great weight." *Honaker v. Colvin*, 2015 WL 262972, *3 (C.D. Cal. Jan. 21, 2015) (internal

19   quotations and citations omitted).[4] This is because "an ALJ cannot be required to believe

---

[4] SSR 16-3p went into effect on March 16, 2016 and supersedes SSR 96-7p, the previous policy governing the evaluation of symptoms. SSR 16-3p, 2016 WL 1119029, *1. The ruling indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." *Id*. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." *Id*. This ruling is consistent with the previous policy and clarifies rather than changes existing law. Under either ruling, the ALJ is required to consider the claimant's report of her symptoms against the record—in SSR 96-7p, this resulted in a "credibility" analysis; in SSR 16-3, this allows the adjudicator to evaluate "consistency." *Compare* SSR 16-3p *with* SSR 96-7p (both rely on two step process followed by an evaluation of claimant's testimony and contain the same factors for consideration).
    "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Treicherler v. Comm'r. Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). "If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court may not engage in second-guessing." *Honaker*, 2015 WL 262972 at * 3 (internal quotations and citation omitted).

While questions of credibility are functions solely for the ALJ, this Court "cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Comm'r Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F. 2d 341, 344 (9th Cir. 1991)). "Second, if the claimant meets this first test and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of the symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Further, "[t]he ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

While it is permissible for an ALJ to look to the objective medical evidence as one factor in determining credibility, the ALJ's adverse credibility finding must be supported by other permissible evidence in the record. *Bunnell*, 947 F.2d at 346–47 ("adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence"). However, "an ALJ may reject a claimant's statements about the severity of his symptoms and how they affect him if those statements are *inconsistent with or contradicted by* the

objective medical evidence." *Robbins*, 466 F.3d at 887 (emphasis in original); *see also Rossiter v. Berryhill*, 2018 WL 1041172, *7 (D. Oregon Feb. 2, 2018) ("It is well settled that an ALJ may discount a claimant's testimony on the grounds that (1) it is inconsistent with objective medical evidence, (2) there is a lack of corroborating medical evidence, or (3) there is insufficient medical evidence to establish disability during the insured period.").

Here, the ALJ did not make a finding that Plaintiff was malingering; therefore, to support his discounting of Plaintiff's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. In his decision, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical evidence or other evidence in the record. (AR 19).

The ALJ first noted that Plaintiff's daily activities were not consistent with her allegations of complete disability. (AR 20). Activities of daily living "may be grounds for discrediting the claimant's testimony to the extent that they contradict the claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112–13. However, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. "Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" *Garrison*, 759 F.3d at 1016 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Here, Plaintiff's daily activities as she described them include caring for her personal needs, watching her two youngest children during the day, helping her oldest child with homework and doing puzzles with him, preparing simple meals, performing limited housework such as dishes, vacuuming, and folding laundry, spending time with extended family, shopping for basic necessities, and driving to appointments. Thus, to the extent that

Plaintiff alleges a totally debilitating impairment, her ability to perform these activities belies that contention. However, while Plaintiff's ability to care for herself and her children does not necessitate a finding that she has no difficulties, the record also does not compel the conclusion that Plaintiff urges that she is completely unable to function in a work setting. Given Plaintiff's allegation that she is in pain 24/7, 365 days a year, the ALJ could properly consider that Plaintiff's daily activities, including caring for two young children while her husband is at work, were inconsistent with her allegations of completely disabling pain. *See Garrison*, 759 F.3d at 1016 (9th Cir. 2014); *Molina*, 674 F.3d at 1112–13. Although the evidence may also admit of an interpretation more favorable to Plaintiff, the ALJ's interpretation was rational, and "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("[T]he ALJ's interpretation of [the claimant's] testimony might not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it."). Accordingly, the Court finds no error on this point.

Second, the ALJ found that the objective medical evidence was not consistent with Plaintiff's allegations. (AR 20). The ALJ noted Plaintiff's complaints that she was in pain 24/7, 365 days a year, and that she had difficulty sitting, standing, walking, climbing stairs, lifting, kneeling, squatting, bending, reaching, using her hands, seeing, remembering, concentrating, and following instructions. (AR 18). The ALJ considered the medical evidence and noted Plaintiff's complaints to her rheumatologist of pain throughout her body and that she has difficulty walking without a cane, and that Dr. Tok has prescribed a variety of medications. (AR 19). The ALJ also noted Plaintiff's asthma treatment showed that she had only rare exacerbations, exams were normal, and her asthma was under good control. The ALJ specifically found that although Plaintiff claimed she needed to elevate her legs during the day, there was no supporting medical evidence to substantiate that

allegation, and the record consistently documented pain without swelling. (AR 20).

Plaintiff points to evidence in the record to support her argument that objective evidence supports a finding that her medically-determinable impairments could cause the symptoms alleged. (Doc. 16 at 11). Plaintiff notes that she was observed to have pain on range of motion of her shoulders; tenderness in wrists, metacarpal joints, shoulders, elbows, and knees; frequent tenderness of the joints; and elevated ESR and CRP indicative of rheumatoid arthritis. Plaintiff also argues that although there is a lack of evidence documenting edema in the record, that is not the only reason a person might be more comfortable lying down, and that she is more comfortable with her feet up regardless of whether they are swollen. (Doc. 16). Plaintiff's arguments are misplaced. The ALJ did in fact find that Plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements regarding the intensity and limiting effects of her symptoms were not entirely consistent with the medical and other evidence. For example, Plaintiff claimed she needed to elevate her legs throughout the day, but many of Plaintiff's exams documented no edema, and there is no specific medical recommendation in the record to elevate the legs. The Court also notes that the ALJ was sensitive to Plaintiff's subjective complaints as reflected in the RFC assessment limiting Plaintiff to a reduced range of light work.

Finally, the ALJ noted that Plaintiff obtained narcotics from several physicians. However, contrary to Plaintiff's suggestion, the ALJ did not state that he discounted Plaintiff's allegations because she used multiple narcotics, and the Court will not read into the record something that the ALJ did not actually say.

In sum, the Court finds that the ALJ provided clear and convincing, specific reasons to find that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical evidence or other evidence in the record. *See Molina*, 674 F.3d at 1113; *Valentine*, 574 F.3d at 693. Plaintiff essentially asks the Court to reweigh the evidence more favorably to her, but Plaintiff's alternate interpretation is not enough to assign error to the ALJ's findings. "While the Court

is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the [ALJ]." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). "When the evidence is susceptible to more than one rational interpretation, and the [ALJ's] conclusion is one such rational interpretation, that interpretation must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The medical evidence presented perhaps would permit a reasonable mind to make a finding of disability. It also would permit a finding of no disability. When there is evidence sufficient to support either outcome, we must affirm the decision actually made.").

### B.     *Chavez* and State Agency Opinions

Plaintiff argues that the ALJ erred by misapplying the *Chavez* acquiescence ruling to give inappropriate weight to the state agency physician opinions. (Doc. 16 at 12). Plaintiff confuses the issues on this point and the Court finds no error.

In *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the Ninth Circuit held that when there is a prior final decision by an ALJ that a claimant is not disabled, there is a presumption of continuing nondisability that applies when an ALJ is adjudicating a subsequent disability claim. "[I]n order to overcome the presumption of continuing nondisability arising from the first [ALJ's] finding of nondisability, [the claimant] must prove 'changed circumstances' indicating a greater disability." *Id.* at 693. Further, even if a claimant overcomes the presumption, "[t]he first [ALJ's] findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings." *Chavez*, 844 F.2d at 694.[5] "Issues are barred from reconsideration unless new and material evidence or a change in

---

[5] Social Security Acquiescence Ruling 97-4(9) implemented *Chavez* and directs that a claimant must rebut the presumption of continuing nondisability with changed circumstances. Further, if the presumption is rebutted, the ALJ must give effect to certain of the ALJ's findings on the prior claim, unless there is new and material evidence related to the finding. *Id.*

circumstances contradict the previous ALJ's findings." *Rowan v. Comm'r of Soc. Sec. Admin.*, 2019 WL 5541268, *3 (D. Ariz. Oct. 28, 2019) (citing *Chavez*, 844 F.2d at 694).

Here, Plaintiff argues that the ALJ misapplied *Chavez* to give great weight to the state agency physician opinions stating that the presumption of nondisability had not been rebutted. (Doc. 16 at 12). The ALJ noted that the DDS doctors opined that Plaintiff had not overcome her *Chavez* burden and that there was no changed circumstance and Plaintiff was not disabled. (AR 20). The ALJ gave the opinion great weight because it was consistent with the medical evidence of record. *Id.* Plaintiff contends that the ALJ's decision shows that the presumption was in fact rebutted because the ALJ found severe impairments at Step Two and continued the sequential evaluation. (Doc. 16 at 13). Plaintiff concludes that it was therefore error for the ALJ to give great weight to the state agency physician opinions that there were no changed circumstances and Plaintiff was not disabled. *Id.*

The Court finds that even if the ALJ did err in applying *Chavez*, any error was harmless. Although the ALJ stated that Plaintiff had not overcome the presumption of continuing nondisability (AR 15), the ALJ conducted the five-step sequential inquiry, including a review of the medical evidence and Plaintiff's subjective symptom testimony, and found that Plaintiff had the severe impairments of asthma and rheumatoid arthritis. The ALJ made an RFC assessment based on the medical evidence, objective findings, opinion statements, and Plaintiff's testimony, and determined that Plaintiff was not disabled because she could adjust to other work.[6] Thus, the ALJ's ultimate nondisability determination was not based on res judicata, but rather on his own independent findings.[7] *See Plummer v. Berryhill*, 747 Fed.Appx. 631 (9th Cir. 2019).

---

[6] The Court wholly rejects Plaintiff's bold assertion that the RFC finding was based on the ALJ's "best guess" as to Plaintiff's abilities. (Doc. 16 at 14); *see* SSR 96–8p, 1996 WL 374184 at *5 ("RFC assessment must be based on all the relevant evidence in the case record" and ALJ "must consider all allegations of physical and mental limitations or restrictions"); 20 C.F.R. § 416.920(e) (ALJ must consider claimant's subjective experiences of pain); *see also Dschaak v. Colvin*, 2015 WL 181803, *3 (D. Or. Jan. 14, 2015) ("An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony.").

[7] Indeed, had ALJ Johnson applied *Chavez* to the previous ALJ's decision, ALJ Johnson would have stopped his analysis at Step Two based on the prior ALJ's finding that Plaintiff had no severe impairments. (AR 71).

C.     Step Five Finding

Lastly, Plaintiff argues that the ALJ erred by failing to resolve discrepancies between the VE testimony and the DOT. (Doc. 16 at 14). The Court finds no error on this point; Plaintiff is attempting to manufacture a conflict where none exists.

At the hearing before the ALJ, Kathleen McAlpine testified as a vocational expert. (AR 39). The ALJ asked McAlpine to assume an individual who could do a range of light work with the following restrictions: frequently lift 10 pounds and occasionally lift 20 pounds; stand/walk 4 out of 8 hours; sit 6 hours; frequently handle, reach, and do fine manipulation with no keyboarding required; frequently climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally bend and kneel; never crawl; and no unprotected heights or fast-moving machinery. (AR 40). McAlpine testified such a person could not do Plaintiff's past work because of the keyboarding, but could do other jobs such as courier/messenger, janitor/cleaner, and parking lot attendant. (AR 40–41).

Plaintiff first argues that work at the light exertional level contemplates standing and/or walking for 6 out of 8 hours, but the ALJ found Plaintiff could only stand/walk for 4 hours. (Doc. 16 at 15). Plaintiff suggests that "[i]t is difficult to imagine a janitor, for example, being able to perform her job duties from a sitting position for four hours out of an eight-hour workday." *Id.* The Court declines Plaintiff's invitation to provide an alternative interpretation of the evidence. In his decision, the ALJ noted that if Plaintiff had the RFC to do the full range of light work, the guidelines would direct a finding of not disabled. (AR 21). However, because Plaintiff had additional limitations, the ALJ took testimony from the VE "[t]o determine the extent to which these limitations erode the unskilled light occupational base." *Id.* The hypothetical posed to the VE included a limitation to standing/walking for 4 out of 8 hours, and the VE testified that such an individual could perform the jobs of courier messenger, janitor/cleaner, and parking lot attendant. Based on the VE's testimony, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work and therefore was not disabled. (AR 22). Even if the Court entertained Plaintiff's argument regarding the janitor position, the VE

still identified two additional jobs that an individual with Plaintiff's standing/walking limitations could perform.

Plaintiff also argues that the jobs of courier messenger and parking lot attendant involve being around moving vehicles, and that "there is some question as to whether moving vehicles count as 'hazards.'" (Doc. 16 at 16). The ALJ's RFC finding includes a limitation to "avoid unprotected heights and workplace hazards." (AR 17). Plaintiff contends that the ALJ did not define "hazards" and instead urges the Court to consider the O*Net, a resource not relied upon by the ALJ or the VE and not incorporated into the Social Security Regulations, and which defines "hazardous machinery" to include "working near vehicular traffic." (Doc. 16 at 16). Based on this definition in the O*Net, Plaintiff argues that both the courier messenger and the parking lot attendant jobs would be precluded. Again, the Court declines Plaintiff's invitation to provide an alternative interpretation of the evidence. The ALJ's hypothetical to the VE included a clear limitation to avoid unprotected heights and workplace hazards, and the VE testified that there were three jobs that Plaintiff could perform. Neither the ALJ nor the VE suggested that workplace hazards included moving vehicles. Further, the Social Security Regulations explaining "environmental restrictions" define "hazards" to include "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-6p, 1996 WL 374185, *9. Thus, there is also no suggestion in the regulations that "workplace hazards" is meant to include vehicular traffic.

Accordingly, the Court finds no error on this point. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("a federal court's review of Social Security determinations is quite limited" and courts "leave it to the ALJ to . . . resolve ambiguities in the record." (internal quotations and citation omitted)).

## V. Remedy

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's

findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

Here, the undersigned finds that the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, in light of the foregoing,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and close its file on this matter.

Dated this 31st day of January, 2020.

_____
Eric J. Markovich
United States Magistrate Judge